**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **CENTRALSQUARE TECHNOLOGIES, LLC,** | : | |
| | : | **Case No. 2:25-CV-774** |
| **Plaintiff,** | : | |
| **v.** | : | **Judge Algenon L. Marbley** |
| | : | |
| | : | **Magistrate Judge Kimberly Jolson** |
| **THE NATIONAL BOARD OF BOILER** | : | |
| **AND PRESSURE VESSEL INSPECTORS,** | : | |
| | : | |
| **Defendant,** | : | |

**<u>OPINION & ORDER</u>**

This patent-infringement action is before this Court on Defendant The National Board of Boiler and Pressure Vessel Inspector's ("NBBI") Motion to Dismiss (ECF No. 14), Plaintiff CentralSquare Technologies' ("CentralSquare") Motion for Leave to File a Sur-Reply (ECF No. 22), and CentralSquare's Unopposed Motion to Amend Infringement Contentions (ECF No. 38). For the reasons set forth below, this Court **GRANTS** NBBI's Motion to Dismiss, **DENIES** CentralSquare's Motion for Leave to File a Sur-Reply, and **GRANTS** CentralSquare's Unopposed Motion to Amend Infringement Contentions. Central Square's Complaint is **DISMISSED WITHOUT PREJUDICE**.

## I. BACKGROUND

### A. Factual Background

CentralSquare is a public sector company and owner of the Jurisdiction Online software suite ("Jurisdiction Online"). (ECF No. 1 at 3). Launched in 2000, Jurisdiction Online was one of the earliest online platforms that streamlined the inspection process of boilers, pressure vessels, elevators, and other equipment required to be inspected by law. (*Id.* at 4). Prior to Jurisdiction Online, such processes were restricted to paper documentation or unshared databases and faced

1

hurdles due to the time-consuming nature of relying on traditional methods of exchanging information between entities. (*Id.* at 5). The Jurisdiction Online platform offers an easy way for governments and insurance companies to track the registration and inspection status of these products by offering "a shared database to allow for the easy transfer of information and records" and allowing "for data sharing between regulators, insurance companies, inspectors, and repair workers to facilitate the regulatory process." (*Id.* at 4–5). Moreover, the Jurisdiction Online platform replaced "prior systems for managing inspections [that] required 'paper forms supplied by the jurisdiction in which the vessel is located'" with a "'centralized, and web enabled process for the transfer of data between multiple jurisdictions and multiple entities.'" (*Id.* at 7). In 2003, Jurisdiction Online became a registered trademark, and on February 20, 2007, the United States Patent and Trademark Office ("USPTO") issued Patent 7,181,304 ("'304 patent") for Jurisdiction Online. (*Id.* at 3–4). The platform was acquired by CentralSquare in 2018. (*Id.* at 4).

In 2022, Defendant NBBI announced the roll out of the Jurisdictional Reporting System ("JRS"). (*Id.* at 6). NBBI is an organization of boiler and pressure vessel inspectors that "oversee[s] adherence to laws, and regulations related to pressure equipment." (*Id.*). The JRS system also offers an online tracking platform for the registration and inspection of boilers, pressure vessels, elevators and other equipment required to be inspected by law. (*Id.*; ECF No. 14-1 at 2).

In its Complaint, CentralSquare alleges that the JRS system directly infringes on at least claim 1 of the '304 patent which states:

> A method for managing required inspections of inspectable objects for a plurality of different jurisdictions by a central computer system by facilitating the inspection of objects and review and approval of data from object inspection by object controlling jurisdictions, comprising the steps of:
>   a. receiving object data for inspectable objects located in a plurality of jurisdictions in the central computer system via a global computer network;
>   b. storing the object data in at least one database coupled to the central computer system;
>   c. determining an object controlling jurisdiction for each object;

d. displaying online inspection template information based upon compliance requirements of an object controlling jurisdiction;

e. receiving object inspection result data relating to an object resulting from inspection of the object by an inspection entity based upon the inspection template information via the global computer network;

f. storing the object inspection result data in the at least one database;

g. providing object inspection result data on-line to the object controlling jurisdiction via the global computer network;

h. receiving review result data with respect to object inspection result data on-line from the object controlling jurisdiction via the global computer network;

i. storing the review result data in the at least one database; and

j. providing the review result data on-line to the inspection entity via the global computer network.

(ECF No. 1 at 6–8; ECF No. 1-2, Exhibit A at 37–39). CentralSquare contends that the combination of elements described in the '304 patent was unknown prior to Jurisdiction Online and provided significant advantages over existing systems. (ECF No. 1 at 6). In launching the JRS system, however, CentralSquare contends that NBBI directly infringed on its patent "by practicing a method of managing required inspections of inspectable objects as claimed in the '304 patent." (*Id.* at 7).

## B. Procedural History

On July 11, 2025, CentralSquare filed a complaint for patent infringement against NBBI. (ECF No. 1). On August 22, 2025, NBBI filed a Motion to Dismiss asserting that the '304 patent is patent-ineligible and therefore invalid under 35 U.S.C. § 101. (ECF No. 14 at 3). On September 12, 2025, CentralSquare filed its Opposition Motion. (ECF No. 20). NBBI filed its Reply Motion on September 26, 2025. CentralSquare has since filed a Motion for Leave to File a Sur-Reply which NBBI opposes. (ECF Nos. 22, 23). Finally, on February 2, 2026, CentralSquare filed an Unopposed Motion to Amend Infringement Contentions (ECF No. 38). These motions are now ripe for this Court's consideration.

## II.     STANDARD OF REVIEW

### A.  Motion for Leave to File Sur-Reply

Generally, sur-replies are "highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter." *Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.*, 875 F. Supp. 2d 791, 797 (W.D. Tenn. 2012) (citation omitted). Further, the Federal Rules of Civil Procedure do not contemplate the filing of sur-replies. This Court's Local Civil Rules permit additional memoranda only "upon leave of court for good cause shown." S.D. Ohio Civ. R. 7.2(a)(2). While the Rules do not define good cause, the Sixth Circuit has noted that additional filings "may be allowed in the appropriate circumstances, especially '[w]hen new submissions and/or arguments are included in a reply brief, and a non-movant's ability to respond to the new evidence has been vitiated.'" *Key v. Shelby Cnty.*, 551 F. App'x 262, 265 (6th Cir. 2014) (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)). Even so, courts in the Southern District have permitted parties to file sur-replies without showing good cause when it did not result in prejudice toward the opposing party. *See Nat'l City Bank v. Aronson*, 474 F. Supp. 2d 925, 930 (S.D. Ohio 2007).

### B.  Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether the pleading states "a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the Court must construe the pleading in the light most favorable to the non-moving party, accept all well-pleaded factual allegations as true, and draw all reasonable inferences in that party's favor. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). However, the Court is not required to accept "legal conclusions" or "[t]hreadbare recitals

4

of the elements of a cause of action" merely because they are presented as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citation omitted).

To survive dismissal, the pleading must contain sufficient factual matter to state a claim that is "plausible on its face," meaning the facts alleged must permit the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citations omitted). Although the Court generally confines its review to the pleading, it may consider exhibits attached to it and documents incorporated by reference without converting the motion to one for summary judgment. Fed. R. Civ. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997); *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citations omitted).

The question of "whether a claim recites patent eligible subject matter is a question of law which may contain underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). A court is within reason to determine patent eligibility at the (12(b)(6) stage so long as "there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 112, 1125 (Fed. Cir. 2018). When "there are claim construction disputes at the Rule 12(b)(6) stage, ... either the court must proceed by adopting the non-moving party's constructions, ... or the court must resolve the disputes to whatever extent is needed to conduct the § 101 analysis, which may well be less than a full, formal claim construction." *Id.* (internal citations omitted). A claim that a patent's claims are directed to patent-ineligible subject matter requires this Court to consider "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field...." *Berkheimer*, 881 F.3d at 1368. This "is a question of fact. Any fact,

5

such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Id.*

### III.  LAW AND ANALYSIS

#### A.  Motion for Leave to File a Sur-Reply

In support of its Motion for Leave to File a Sur-Reply, CentralSquare asserts that good cause exists to clarify misstatements of law and fact raised in NBBI's reply brief. (ECF No. 22). Specifically, CentralSquare contends that NBBI mischaracterizes CentralSquare's arguments regarding factual subject matter eligibility and misstates the law regarding when courts are entitled to resolve patent eligibility at the 12(b)(6) stage. (*Id.* at 1–2). This Court finds that NBBI did not assert any new arguments not already raised. Moreover, this Court is well equipped to interpret the law regarding the appropriateness of 12(b)(6) motions in the context of patent eligibility independent of the Parties' construction. As such, allowing a sur-reply would not be of service to this Court and would only allow CentralSquare to get the last word. *See Spitzer Autoworld Akron, LLC v. FCA US LLC*, 2023 WL 4842669, at *1 (N.D. Ohio Feb. 8, 2023). Accordingly, CentralSquare's Motion for Leave to File Sur-Reply (ECF No. 22) is hereby **DENIED**.

#### B.  Motion to Dismiss

##### 1.  *Representative Claims*

As a threshold matter, this Court must first address the parties' dispute regarding whether claim 1 is representative of the entire '304 patent for the purposes of conducting the patent eligibility analysis under 35 U.S.C. § 101. "A court may designate representative claims 'in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to

treat a claim as representative.'" *Kit Check, Inc. v. Health Care Logistics, Inc.*, 2019 WL 1200738, at *3 (S.D. Ohio Mar. 14, 2019) (quoting *Berkheimer*, 881 F.3d at 1365.). Where the parties dispute whether a claim is representative of the patent, the court may make its own determination as to whether the claims are "substantially similar and linked to the same abstract idea." *Id.* (citation omitted). Notably, however, a court is not required to "to address claims not asserted or identified by the non-moving party if the court determines that certain claims are representative because they are substantially similar and linked to the same abstract idea." *Id.* (quoting *Zimmers v. Eaton Corp.*, 2016 WL 4094870, at *5 (S.D. Ohio Aug. 2, 2016)).

In the Complaint, CentralSquare asserts that the "JRS system directly **infringes at least claim 1** of the '304 patent." (ECF No. 1 at 6) (emphasis added). CentralSquare, however, does not specify further in the Complaint which other claims, if any, upon which NBBI infringes. NBBI contends that regardless of any ambiguity, claim 1 is representative of all other claims in the patent. (ECF No. 14-1 at 6). CentralSquare refutes this assertion and argues that NBBI has failed to show claim 1 is representative of all claims. (ECF No. 20 at 6). In CentralSquare's view, NBBI overgeneralized the distinctions between the claims in the patent and used "conclusory analysis" in making its arguments. (*Id.* at 7).

While CentralSquare specifically points to claims 22 and 38 as distinct claims, not encompassed by claim 1, CentralSquare ultimately fails to offer an alternative representative claim or an argument as to patent eligibility for each individual claim in the patent. *See Zimmers*, 2016 WL 4094870, at *5 (finding the court not obligated to discuss each claim where the non-moving party offered no alternative representative claim nor made an argument regarding the eligibility of each claim). Instead, this Court will also include in its patent eligibility analysis, the claims that CentralSquare explicitly discussed in its opposition motion (claims 22 and 38). *See id.*; *see*

*also Horizon Glob. Americas Inc. v. Continental Automotive Systems, Inc.*, 2021 WL 795569, at *982 (E.D. Mich. Mar. 2, 2021) (quoting *Biotec Biologische Naturverpackungen GmbH v. Biocorp, Inc.,* 249 F.3d 1341, 1353 (Fed. Cir. 2001)) ("[I]t is not the Court's 'burden to search through lengthy technologic documents for possible evidence' of invalidity.").[1]

### 2.    *Claim Construction*

Second, this Court must address the parties' claim construction arguments. CentralSquare contends that NBBI's motion must be denied given that the motion raises claim construction issues that require this Court to consider subject matter eligibility. (ECF No. 20 at 8). Specifically, CentralSquare raises that the term "**providing to the object controlling jurisdiction for review changes to inspection result data derived from a prior object inspection by an inspection entity**," found in claims 10, 22, and 38, raises a dispute given that NBBI asserts such language is a "minor non-technological step[] in the well-known process of performing inspections." (*Id.*). Conversely, CentralSquare highlights the importance of this language since it explains the '304 patent's goal of "enabling a review to easily identify the changes between old information and new information." (*Id.* at 9) (internal quotations omitted).

In NBBI's view, its motion raises no such claim construction issues. (ECF No. 21 at 12–13). Additionally, NBBI contends that CentralSquare fails to identify any credible argument that subject matter eligibility will be impacted meaningfully by claim construction. (*Id.* at 13). Moreover, NBBI asserts that the patent eligibility analysis does not give significant weight to conclusory allegations about the inventiveness of a patent. (*Id.*).

---

[1] Regardless of the parties' arguments, this Court also conducted an independent analysis and agrees that claim 1 is representative of all claims given the claims are all directed to facilitating and increasing the efficiency of the process of reviewing and transferring inspection data between entities and across multiple jurisdictions. *See Content Extraction & Transm. LLC v. Wells Fargo Bank, Nat. Ass'n*, 2013 WL 3964909, at *5 (D.N.J. July 31, 2013), *aff'd,* 776 F.3d 1343 (Fed. Cir. 2014) ("Where the claims, as here, are substantially similar and linked to the same abstract idea, the Court is free to dispose of the additional claims in a less detailed fashion.").

This Court notes that "claim construction is not an inviolable prerequisite to a validity determination under § 101." *Truveris, Inc. v. Skysail Concepts, LLC.*, 2022 WL 4537071, at *27 (N.D. Ohio Sept. 28, 2022) (quoting *Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012)). Further, in making a claim construction argument, a plaintiff should point to how the defendant has incorrectly defined a term or articulate how a certain construction of the term might impact the patent eligibility analysis. *See Truveris*, 2022 WL 4537071, at *28; *Cybergenetics Corp. v. Institute of Environmental Science & Research*, 490 F. Supp. 3d 1237, 1242 (N.D. Ohio 2020), *aff'd,* 856 F. App'x 312 (Fed. Cir. 2021). While CentralSquare points to the need for construction of the language in claim 38, CentralSquare does not explicitly state how this Court should construe the claim. Nor does CentralSquare articulate explicitly how a different construction would alter the eligibility analysis. (ECF No. 20 at 8–9). It does not follow that as a matter of law this Court must deny NBBI's motion merely because claim construction has not occurred. This is particularly true where the claims are straightforward and there has been demonstration of how the raised terms would alter the patent eligibility analysis. *See Truveris*, 2022 WL 4537071, at *27–28; *see also Burnett v. Panasonic Corp.,* 741 Fed. App'x 777, 783 (Fed. Cir. 2018).

### 3.  *The Alice Test*

Under 35 U.S.C. § 101, patent protection is available for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." Notably, there are three categories of subject matter that are not patent-eligible: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980).  If a patent involves one of these categories, however, it remains eligible for patent protection if it shows an "application" of such a concept "to a new and useful end." *Gottschalk v. Benson*, 409

9

U.S. 63, 67 (1972). The goal here is to protect innovation without stifling human ingenuity. *See Kit Check, Inc.*, 2019 WL 1200738, at *4.

In *Alice Corp. Pty. v. CLS Bank International*, 537 U.S. 208, 217 (2014), the Supreme Court described the two-part test courts should employ to determine patent eligibility. First, courts must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* If so, in step two the court considers "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78–79 (2012)). Put differently, the second step requires the court to determine if the patent application presents an "inventive concept, sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the" abstract idea itself. *Mayo*, 566 U.S. at 72 (internal quotation marks and citation omitted).

### a.    Alice Step One

First, NBBI contends that patent '304 is patent ineligible because it is directed to the abstract idea of transfer of data between multiple jurisdictions and entities. (ECF No. 14-1 at 9–12). Specifically, NBBI argues the patent "is merely a flow or transmittal of data or information among entities, a flow enabled by generic computer functionalities." (*Id.* at 12). CentralSquare counters that the '304 patent claims specific and non-abstract innovations. (ECF No. 20 at 10). In CentralSquare's view, NBBI offers an overgeneralized summary of the patent that fails to recognize the specific and detailed steps outlined in the claims that implement a "centralized hub to access, record, and store jurisdictional requirements and inspection results in one convenient and efficient portal." (*Id.* at 10, 12).

10

"While the Supreme Court has not precisely defined 'abstract idea,' it has stated that 'a method of organizing human activity' and 'a fundamental economic practice long prevalent in our system of commerce' fall within the prohibited abstract idea category. *Kit Check*, 2019 WL 1200738, at *4 (citations omitted). Courts should analyze "the focus of the claimed advance over the prior art to determine if the claim's character *as a whole* is directed to excluded subject matter." *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1346 (Fed. Cir. 2019) (internal quotation marks and citation omitted) (emphasis added). Further, "[c]laims are also abstract if they 'simply [add] conventional computer components to well-known business practices.'" *Kit Check*, 2019 WL 1200738, at *4 (quoting *Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338 (Fed Cir. 2016)).

Here, claim 1 of patent '304 focuses on the improvement of inspection process of inspectable objects across jurisdictions. (ECF No. 1 at 7). Claims 22 and 38 explain that the patent provides the object controlling jurisdictions any changes for review in inspection result data derived from a prior inspection. (ECF No. 1-2 at 38). The "prior art" at play here is the review and transfer of inspection data amongst entities across jurisdictions. Put simply, the prior art was the human based process of keeping track of inspection records across jurisdictions, reviewing the records, and transferring the records by mail or other methods between different entities. (ECF No. 20 at 3–4). CentralSquare further notes that some jurisdictions maintained paper based records of the inspections, while others maintained computer based record-keeping systems that were not the most efficient to use and did not share a common software architecture. (*Id.*). Patent '304 sought to increase the ease and efficiency of keeping track of inspection records, sharing them between different entities, and storing them in a central location. As such,

11

the patent provides a one stop shop that maintains all the records in a centralized portal that makes what was once a tedious process more convenient. (*Id.* at 4).

In comparing the prior art to patent '304, this Court finds that patent '304 offers no more than a method of organizing human activity that merely adds conventional computer components to a "well- known" practice. *See Alice*, 573 U.S. at 223 (finding claims directed to the use of a third party to mitigate settlement risk as abstract); *Bilski v. Kappos*, 561 U.S. 593, 611 (2010) (finding claims directed towards the concept of hedging to be an abstract idea). To refute this, CentralSquare cites to *McRO, Inc. v. Bandai Namco Games America Inc.* for support that its claims are not directed to an abstract idea. This Court finds *McRo* to be distinct from this case. The patent in *McRo* was for the automatic animation of lip synchronization and facial expressions of three-dimensional animated characters, a process that previously involved human drawings. 837 F.3d 1299, 1314 (Fed. Cir. 2016).  The *McRo* court opined that "[t]he computer [t]here [was] employed to perform a **distinct process** to automate a task previously performed by humans." *Id.* (emphasis added). There, the "distinct process" involved the evaluation of subsequences, the generation of transition parameters, and the application of transition parameters that were not even in the same scope as the steps taken by the animators when the process was done by hand. *See id.*

Here, the claims of patent '304 provide far less technical steps such as "receiving object data for inspectable objects located in a plurality of jurisdictions … storing the object data in at least one database coupled to the central computer system … displaying online inspection template information based upon compliance requirements … providing the review result data on-line to the inspection entity via the global computer network." This Court finds no demonstration of a step in these claims that constitutes a distinct process that does more than merely add conventional

computer components to this process. *See Content Extraction*, 776 F.3d at 1347 (finding claims directed to "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory" to be an abstract idea). Even in focusing on Claims 22 and 38 that specify that the patent increases inspection efficiency by providing the portions of review data that are different from a prior inspection, such claims do not amount to a distinct, technical process that the computer is employed to perform. Government entities and insurers were already storing inspection records on paper or on computers, providing the inspection records among themselves, and reviewing and comparing the records. The Jurisdiction Online platform merely streamlines these fundamental processes by maintaining an online portal. *See FairWarning IP, LLC v. Iatric Systems, Inc.*, 839 F.3d 1089, 1094 (Fed. Cir. 2016) (finding the claims at issue "merely implement[ed] an old practice in a new environment."). As such, the claims in patent '304 are directed to an abstract idea.

### b. *Alice Step Two*

Next this Court must analyze whether the '304 patent contains an "inventive concept" that transforms the abstract idea. *Alice*, 573 U.S. at 217-18. "[T]ransformation into a patent-eligible application requires more than simply stating the [abstract idea] while adding the words 'apply it.' *Id.* at 221.CentralSquare maintains its claims recite an inventive concept given that the '304 patent "claims a specific method and system that provides a solution to a narrow problem faced by the governmental inspection software industry." (ECF No. 20 at 14). Moreover, CentralSquare highlights that at the time of the patents invention, no such centralized system existed across jurisdictions. In CentralSquare's view, the centralized hub system "that requires data from a plurality of jurisdictions" in and of itself is an inventive concept. (*Id.*). NBBI alternatively contends the claims here contain no meaningful limitations that would restrict them to a "non-routine,

transformative application of the abstract idea." (ECF No. 14-1 at 13). Specifically, NBBI asserts that the claims merely recite generic computer limitations and conventional utilized equipment. (*Id.*).

This Court finds that the '314 patent's claims do not contain an inventive concept. NBBI has satisfied its burden in highlighting that the patent accomplishes its abstract idea through conventional computer methods such as storing the inspection data, displaying the data, and transferring the data. *See Credit Acceptance Corp. v. Westlake Services*, 859 F.3d 1044, 1057 (Fed. Cir. 2017) ("[R]elying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible."); *Cardiacsense LTD v. Garmin Internatl., Inc.*, 776 F. Supp. 3d 644, 653 (E.D. Mich. 2025) (finding that claims directed to providing real time feedback to a runner does not constitute an inventive concept that transforms an abstract idea). As NBBI highlights, the '304 patent states itself that it utilizes "conventional computer components" and the methods are "not related to any particular computer or apparatus." (ECF No. 1-2 at 27). *See Credit Acceptance Corp.,* 859 F.3d at 1055 ("[M]ere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology."); *Cf. Horizon Glob. Americas Inc.*, 2021 WL 795569, at *985 ("The written description sections of the Patents state that the inventions were new and not conventional.").

CentralSquare correctly retorts that the non-conventional ordering of conventional components can satisfy *Alice* step two. (ECF No. 20 at 15) (citing *BASCOM Global Internet Services., Inc. v. AT & T Mobility LLC*, 827 F.3d 1341, 1350–51 (Fed. Cir. 2016)). As discussed above, claims 22 and 38 provide the limitation that provides the reviewer utilizing the central hub with changes to increase the efficiency of the review. (ECF No. 1 at 7). Claim 1 provides a method for managing the inspections across jurisdictions through receiving the data in a centralized hub,

14

storing the data in the hub, displaying the data on the hub, determining the object controlling jurisdiction, providing inspection result data on the hub, and providing review of result data in the hub. (ECF No. 1-2 at 38). Notably, however, this Court still does not see how the combination of these elements constitutes a non-conventional arrangement. *See Intellectual Ventures I LLC v. Capital One Financial Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017) ("[T]he claim language here provides only a result-oriented solution, with insufficient detail for how a computer accomplishes it. Our law demands more.").

CentralSquare relies on *Cellspin Soft, Inc. v. Fitbit, Inc.* as support that similar claims to those in patent '304 have been deemed patent eligible in the past. (ECF No. 20 at 19). The claims in *Cellspin*, however, not only "identif[ied] several ways in which its application of capturing, transferring, and publishing data was unconventional" it went beyond, by specifying in detail, the non-conventional improvements in the patent compared to the prior art. 927 F.3d 1306, 1316 (Fed. Cir. 2019). For example, Cellspin alleged "that it was unconventional to separate the steps of capturing and publishing data so that each step would be performed by a different device linked via a wireless, paired connection." *Id.* Cellspin further specified ***how*** this was accomplished by "establishing a paired connection" between the mobile and capture devices and utilizing an HTTP to transfer the data. *Id.* at 1317. This Court acknowledges that while the end goal of capturing, transferring, and publishing data for the Cellspin patent is similar to the '304 patent, Central Square's allegations are far less detailed and provide this Court with minimal information regarding the inventive concepts in the '304 patent claims and how those concepts function. As such, this Court finds no inventive concept in these claims.

As such, Defendant's Motion to Dismiss is **GRANTED**. However, this Court dismisses the Complaint **WITHOUT PREJUDICE** and **GRANTS** CentralSquare's request to amend the

15

Complaint. (ECF No. 20 at 20). "When a motion to dismiss is granted in a case ... the usual practice is to grant plaintiffs leave to amend the complaint. Generally, leave to amend is 'freely given when justice so requires.'" *Cardiacsense*, 776 F. Supp. 3d at 653 (quoting *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 698 (6th Cir. 2004)). Leave to amend should be denied if the amendment would be futile, prejudicial, or the party has seeking amendment has repeatedly demonstrated an inability to cure deficiencies. *See 3rd Eye Surveillance, LLC v. United States*, 140 Fed. Cl. 39, 52 (Fed. Cl. 2018). As such, CentralSquare may file an amended complaint, so long as the amendment addresses the deficiencies identified herein. *Id.*

Finally, this Court addresses Plaintiff's Unopposed Motion to Amend Infringement Conditions. (ECF No. 38). The proposed amendment addresses the ways in which CentralSquare contends NBBI directly and indirectly infringes on its patent. (See generally *id.*). Such contentions do not address whether the patent is directed towards an abstract idea or whether the patent adds an inventive concept to an abstract idea. As such, the motion to amend has no impact on this Court's ruling on the motion to dismiss. This Court, however, will allow CentralSquare to amend its infringement conditions given the fact that CentralSquare may file an amended Complaint and NBBI does not oppose the motion. Accordingly, Plaintiff's Unopposed Motion to Amend is **GRANTED**.

## IV.    CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is **GRANTED** (ECF No. 14), Plaintiffs' Motion for Leave to File a Sur-Reply is **DENIED** (ECF No. 22), and Plaintiffs'

Unopposed MOTION to Amend/Correct Infringement Contentions is **GRANTED** (ECF No. 38).

Central Square's Complaint (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE**.

      **IT IS SO ORDERED.**

                                        **ALGENON L. MARBLEY**
                                        **UNITED STATES DISTRICT JUDGE**

**DATED: March 17, 2026**